## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

———————————————————

PAMELA LLOYD, on behalf of herself and
others similarly situated,

              Plaintiff,

    v.

JAMES E. ALBERTELLI, P.A. d/b/a
ALBERTELLI LAW,

              Defendant.

———————————————————

**Civil Action No.: 0:20-cv-60300-RS**

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
### OF CLASS ACTION SETTLEMENT

#### Introduction

This case centers on the alleged failure of James E. Albertelli, P.A. d/b/a Albertelli Law ("Defendant") to comply with certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending initial debt collection letters to consumers. Specifically, Pamela Lloyd ("Plaintiff") alleged that Defendant's initial debt collection letters did not comply with sections 1692g(a)(3)-(5) and 1692e of the FDCPA. Defendant denies any liability or that its practices violated the FDCPA.

Following early settlement discussions, the parties reached an agreement to resolve this matter whereby Defendant will create a settlement fund of $20,000 to be distributed pro-rata to each participating class member. The settlement fund exceeds 1% of Defendant's book value net worth, and thus is more than Plaintiff could have recovered in statutory damages for the proposed class had she prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 or 1% of the net worth of the debt collector).

In addition, and separate from the settlement fund so as not to dilute class members' recoveries, Defendant also will pay: (1) all costs of class notice and settlement administration, which will include the mailing of notice to each class member; (2) full statutory damages of $1,000 to Plaintiff; and (3) and class counsel's reasonable attorneys' fees, costs, and expenses in an amount to be awarded by the Court.[1]

Defendant also will no longer use the form of debt collection letter at issue in this case going forward. This change will benefit any consumers who encounter Defendant's debt collection business in the future.

Considering the statutorily limited damages available to the settlement class under the FDCPA, the risks of continued litigation, the nature of Defendant's conduct and Plaintiff's allegations, as well as the prospective relief afforded by the parties' agreement, the settlement here represents a meaningful result for class members and should be preliminarily approved.

Plaintiff now seeks certification of the settlement class and preliminary approval of the settlement. Defendant does not oppose the relief sought herein: (1) preliminary approval of the parties' settlement, (2) certification of the proposed class for settlement purposes only; (3) appointment of Plaintiff and her counsel as class representative and class counsel, respectively, and (4) approval of the proposal for direct distribution of the class notice as set forth below.

---

[1] The parties have not reached any agreement on the amount of attorneys' fees and litigation costs and expenses Plaintiff will request. However, as set forth in the class notice and in conformity with Rule 23(h), Plaintiff is advising Class members that she will seek no more than $45,000 in attorneys' fees and for the reimbursement of her litigation costs and expenses.

## Summary of the Settlement

**I.      The settlement provides monetary compensation for each class member; in addition, Defendant has ceased using the form of debt collection letter at issue.**

The Settlement Agreement[2] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of: All persons (a) with an address within the states of Florida, Texas, Georgia, Arkansas, Alabama, South Carolina, or Tennessee, (b) to whom James E. Albertelli, P.A. mailed an initial debt collection communication not returned as undeliverable to James E. Albertelli, P.A. d/b/a Albertelli Law, (c) in connection with the collection of a consumer debt, (d) between February 12, 2019 and the date the Court grants preliminary approval of the settlement, (e) that (i) failed to include a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, and (ii) failed to include a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor, but (iii) that included the following statement:

> IF, WITHIN THIRTY (30) DAYS AFTER YOU RECEIVE THIS NOTICE, YOU NOTIFY US, AS STATED ABOVE, THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED AND/OR THAT YOU REQUEST, VALIDATION AND/OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, THE FAIR DEBT COLLECTION PRACTICES ACT REQUIRES US TO CEASE OUR COLLECTION EFFORTS, EVEN IF WE HAVE ALREADY FILED THE LAWSUIT, UNTIL WE PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

Defendant has identified 7,729 potential members of the Class, including Plaintiff.

---

[2]      A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of James L. Davidson, attached as Exhibit A.

Class members who elect to participate in the settlement will receive a pro-rata share of the $20,000 settlement fund. And given that claims rates in these types of consumer protection cases tend to be between approximately 5 percent and 20 percent, each participating Class member is likely to receive between $12.50 and $51.50. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to the Legal Aid Service of Broward County—the *cy pres* recipient selected by the parties. No settlement amounts will revert to Defendant.

In addition, Defendant has ceased using the form debt collection letter at issue. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See, e.g., Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) (Dimitrouleas, J.) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants.").[3]

Finally, in addition to the foregoing, and separate and apart from the settlement fund, Defendant will pay $1,000 to Plaintiff as additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), as well as the costs of class notice and administration, and an award of reasonable attorneys' fees and expenses to counsel for Plaintiff, subject to the Court's approval.

## II.     The Settlement Agreement provides for direct mail notice to all class members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each potential member of the Class. Defendant has in its possession the names and recent addresses of each potential Class member. The settlement administrator will take all reasonable steps necessary to ensure that each Class member receives direct mail notice. Class counsel will also maintain a more detailed long-form class notice on its website, along with relevant pleadings.

---

[3]     Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

To that end, the parties have selected First Class, Inc. to act as the settlement administrator. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 9:18-cv-81368, 2019 WL 3940256, at *3 (S.D. Fla. Aug. 19, 2019) (Middlebrooks, J.) (appointing First Class).

**This Court Should Preliminarily Certify the Settlement Class**

**I.      Plaintiff satisfies the requirements of Rule 23(a).**

To attain certification of the proposed class, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (Dimitrouleas, J.) (certifying FDCPA class).

Given their overwhelmingly common questions of fact and law, numerous district courts in the Eleventh Circuit have certified class actions, like here, based on form communications and standardized debt collection activity. *See, e.g.*, *Holzman v. Malcolm s. Gerald & Associates, Inc.*, 334 F.R.D. 326 (S.D. Fla. 2020) (Smith, J.); *Sullivan*, 2019 WL 3940256, at *2; *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644 (M.D. Fla. 2015); *Lewis v. ARS Nat'l Services, Inc.*, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011). And since certification here is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *Accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A.    The class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant mailed initial collection letters to 7,729 persons in seven states between February 12, 2019 and February 18, 2020, each of which contained materially similar language as that which Plaintiff contends violates the FDCPA. Because the class has over 7,700 potential members dispersed throughout seven states, it is sufficiently numerous that joinder is impracticable. *See Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) (Altman, J.) ("This class consists of 353 members. Accordingly, the number of members of the Settlement Class is so numerous that joinder of all class members would be impracticable[.]").

### B.    Plaintiff's claims present questions of law and fact common to the Class.

The commonality requirement of Rule 23 demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members."  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (Moreno, J.).

"Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. The sole and dispositive legal question is whether that Verification Notice violates the FDCPA." *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11cv78, 2011 WL 5325674, at *2 (E.D. Va. Nov. 3, 2011). Each class member, therefore, has the same claims

against Defendant, and the commonality requirement accordingly is met. *See Holzman*, 334 F.R.D. at 331 ("Here, there is a common question of law shared by the entire class – whether the Template received by all class members violates the FDCPA.").

> ### C.    Plaintiff's claims are typical of the claims of the class she seeks to represent.

The third requirement under Rule 23(a) is that the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Here, typicality is satisfied as Defendant sent debt collection letters with materially identical language to thousands of persons during the class period, all of whom have FDCPA claims identical to Plaintiff based solely on the text of the debt collection letters Defendant sent to them. *See Swanson v. Mid. Am, Inc,*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."). To be sure, there is no doubt that Plaintiff is a member of the Class and that her claims are typical of those of the other members of the Class. *See* Dkt. No. 1-1 (demonstrating that Plaintiff is a member of the Class in that Defendant sent her the violative letter at issue during the class period). As a result, Plaintiff's claims are typical of those of the Class she seeks to represent. *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004) (Dimitrouleas, J.)

("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter.").

### D.      Plaintiff, and her counsel, will fairly and adequately protect the interests of members of the Class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). An adequacy analysis requires two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action. *Dickens v. GC Servs. Ltd. P'ship*, 706 F.App'x. 529, 535 (11th Cir. 2017). "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a fundamental one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Plaintiff's claims are aligned with the claims of members of the Class. She has been committed to vigorously pursuing the members' claims with their best interests in mind. *See* Declaration of Pamela Lloyd, attached as Exhibit B, at ¶¶ 7, 9. Plaintiff has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

Moreover, Plaintiff has retained the services of counsel—Greenwald Davidson Radbil PLLC—who are experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. *See* Ex. A at ¶ 8 (collecting cases).  As a result, Plaintiff satisfies Rule 23(a)(4).

### E.      Plaintiff's counsel should be appointed Class Counsel.

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims

asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." Proposed Class Counsel Greenwald Davidson Radbil PLLC will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), Greenwald Davidson Radbil PLLC also satisfy the considerations of Rule 23(g) and should be appointed as Class Counsel. *See, e.g.*, *Sullivan*, 2019 WL 3940256, at *3 (appointing Greenwald Davidson Radbil PLLC as Class Counsel); *Claxton*, 2020 WL 2759826, at *2 (same).

## II.     Plaintiff satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Pertinent here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

### A.     Common questions of law and fact predominate over any individualized inquiries.

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, No. 8:08-cv-493-T-26TGW, 2008 WL 3850657, at *4 (M.D. Fla. Aug. 14, 2008).

Here, common issues necessarily predominate because Plaintiff's claim is based on standardized conduct by Defendant through its use of form initial debt collection letters. As the Northern District of Alabama explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled.  Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's].  Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5. For these same reasons, Rule 23(b)(3) predominance is satisfied here.

> **B.    A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims, and the claims of class members.**

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit has previously explained:

> [C]lass actions often involve an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually. This consideration supports class certification in

> cases where the total amount sought by each individual plaintiff is small in absolute terms. It also applies in situations where, as here, the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually. This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings.

*Klay*, 382 F.3d at 1270-71. Indeed, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens*, 706 F. App'x at 538.

Because the claims in this case all arise from form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013).

**This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).**

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a

> preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture. Nevertheless, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) itself requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, adequate, and reasonable, and should be preliminarily approved. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are

favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

**I.    There was no fraud or collusion behind the parties' settlement.**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Here, there is no fraud or collusion. Though the parties began engaging in settlement discussions soon after Defendant answered the Complaint, those negotiations continued for several weeks before the parties reached an agreement.

And that agreement was reached only after numerous discussions between counsel concerning the merits of the case, and after Defendant provided Plaintiff with information concerning the size of the Class and Defendant's net worth. The settlement thus is not a product of collusion and was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position. *See, e.g.*, *Claxton*, 2020 WL 2759826, at *2 ("The proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members. The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal.").

**II.    The complexity, expense, and duration of the litigation favors preliminary approval.**

Turning to the second factor, had the case not settled, Plaintiff would have had to obtain class certification, and prevail at summary judgment, or trial, and on an appeal, to obtain any benefits for members of the Class. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.)*, aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Relevant then, Defendant intended to argue that the alleged violation here resulted from a bona fide error—specifically a printing error—notwithstanding its maintenance of procedures reasonably adapted to avoid such an error. *See* ECF No. 6 at 9. Had Defendant prevailed on its bona fide error defense, neither Plaintiff nor members of the Class would have recovered any money from this lawsuit.  *See, e.g.*, *Lawson v. I.C. Sys., Inc.*, No. 3:18-CV-00083-AKK, 2019 WL 2501916, at *8 (N.D. Ala. June 17, 2019) (granting summary judgment to debt collector who established bona fide error defense).

Moreover, because damages under the FDCPA are not mandatory, there is no guarantee that Plaintiff would have recovered any money for the Class. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). Given these considerations, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

14

### III.    The parties have sufficiently developed the factual record through discovery to enable Plaintiff and her counsel to make a reasoned judgment concerning settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties had extensive discussions about the merits of the claims. In addition, Defendant provided Plaintiff with information concerning the size of the Class and Defendant's net worth—the sole determinant of the Class's maximum statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). Moreover, Plaintiff's counsel is well-versed in FDCPA litigation, having litigated numerous FDCPA class actions nationwide. *See* Ex. A, at ¶ 8. The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the Class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### IV.    The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

Next, this Court also must consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *10 (M.D. Fla.

Nov. 23, 2009), *aff'd sub nom*. *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011), and *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011) ("Courts judge the fairness of a proposed compromise by weighing the plaintiffs' likelihood of success on the merits against the amount and form of the relief achieved in the settlement."). In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig*., 830 F. Supp. 2d at 1350.

As an initial matter, class damages here were capped at the lesser of $500,000 or 1% of Defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts— $1,000 for Plaintiff, and the lesser of 1% of the debt collector's net worth or $500,000 for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even none at all. Moreover, the risk of a minimal damages award was not hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL

1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages' to members of the class).

Given the foregoing, the fact that the settlement provides the Class with more than 1% of Defendant's book value net worth, and therefore more in statutory damages than it could have obtained had this case gone to trial, favors preliminary approval. *See, e.g.*, *Claxton*, 2020 WL 2759826, at *2 ("Here, the Settlement provides that the lead Plaintiff will receive $1,000, the Class will receive $5,532, which is above 1% of the combined net worth of the Defendants, and the Defendants have agreed to stop using the form letter at issue—a form of injunctive relief not available under the statute. The Class thus will receive more under the Settlement than it would be statutorily entitled to receive, both in money damages and in injunctive relief."); *Shoemaker v. Bass & Moglowsky*, No. 19-cv-316-wmc, 2020 WL 1671561, at *2 (W.D. Wisc. Apr. 3, 2020) ("More critically, the monetary award each class member will receive likely exceeds that available under the remedies provision of the FDCPA, and the settlement requires defendant to alter its business practices, rendering this an exceptional settlement…").

Furthermore, the expected recovery for participating Class members of between $12.50 and $51.50 compares favorably to class member recoveries in other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Claxton*, 2020 WL 2759826, at *2 ($15.67 per class member); *Sullivan*, 2019 WL 3940256, at *3 ($27.28 per class member); *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508, Dkt. Nos. 181, 190 (S.D. Fla.) (Rosenberg, J.) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member).

What's more, Plaintiff also secured Defendant's confirmation that it has ceased using the form of debt collection letter at issue—a benefit that was not necessarily available at trial. In sum, considering the benefits obtained here, in comparison to those likely at trial, and the risks to moving forward, this factor supports preliminary approval of the settlement.

**V.      The opinions of Plaintiff and her counsel strongly favor preliminary approval.**

Both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Here, Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* Ex. A at ¶¶ 8-15. Correspondingly, the parties' and their counsel's strong support for this settlement strongly supports preliminary approval.

**VI.     The settlement treats class members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each Class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each participating Class member will receive an equal portion of the settlement fund. Finally, the release

affects each Class member in the same way as each participating Class member is agreeing to release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mutual Automobile Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**This Court should approve the proposed notice to class members.**

Under Rule 23(e), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means.

Here, the parties have agreed to a notice program that will use all reasonable efforts to provide direct mail notice to each member of the Class. This notice plan complies with Rule 23 and due process because, among other things, it informs Class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to submit claims to participate in the settlement, and

how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).[4]

In short, this notice plan ensures that Class members' due process rights are amply protected, and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

### This Court should schedule a final fairness hearing.

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and cClass members who have properly objected to the settlement may be heard as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 90 - 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval to the parties' class action settlement. As noted, Defendant does not oppose the relief requested herein.

---

[4]      For a debt to fall within the purview of the FDCPA, it must be consumer in nature. *See* 15 U.S.C. § 1692a(5). Thus, the postcard notice here contains a short claim form that allows potential class members to attest that the debt Defendant attempted to collect from them was a consumer debt, *i.e.*, one incurred primarily for personal, household, or familial purposes. *See, e.g.*, *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 700 (S.D. Fla. 2013) (Altonaga, J.) (discussing use of claim form to determine which potential class member's debts were consumer in nature).

Dated:  June 8, 2020

Respectfully submitted,

/s/ James L. Davidson
James L. Davidson
Florida Bar No. 723371
Jesse S. Johnson
Florida Bar No. 69154
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Matisyahu H. Abarbanel
Florida Bar No. 130435
Loan Lawyers
3201 Griffin Road, Suite 100
Ft. Lauderdale, FL 33312
Tel: (954) 523-4357
matis@fight13.com

Counsel for Plaintiff and the proposed
class

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on June 8,

2020 via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ James L. Davidson
James L. Davidson, Esq.